[No. 22011-7-III.   Division Three.   March 11, 2004.]

HERIBERTO BERROCAL, ET AL., *Appellants*, v. MAX FERNANDEZ, ET AL., *Respondents*.

*Daniel Ford* (of *Columbia Legal Services*), *Victor H. Lara*, and *Kevin Diaz*, for appellants.

*Ryan M. Edgley* and *Paul H. Beattie, Jr.* (of *Edgley & Beattie, P.S.*), for respondents.

KATO, A.C.J. — Heriberto Berrocal and Rafael Castillo appeal the summary dismissal of their claim for unpaid wages under the Minimum Wage Act (MWA), chapter 49.46 RCW. They contend the court erroneously concluded they were excluded from the MWA's requirements because they slept and lived full time at the ranch where they worked as sheepherders. We reverse and remand for trial.

Mr. Berrocal and Mr. Castillo are Chilean nationals who came to work in the United States as sheepherders under the H-2A guest worker program. They were employed jointly by the Western Range Association and Max and Ann Fernandez, members of the association and operators of the Klickitat County sheep ranch where the plaintiffs worked in 1999 and 2000.

Employment contracts required the plaintiffs to live at the ranch and to "perform any or all of the sheepherder tasks as may be assigned." Clerk's Papers (CP) at 56. These duties required them to be available 24 hours per day, seven days per week, with no regularly scheduled days off. They were required to respond at any time of the day or night if dogs alerted them to the presence of predators. They allege this usually happened two or three times per night. Under the contracts, the plaintiffs were paid $650 per month, plus room and board.

The plaintiffs allege their duties required them to work more than 12 hours per day. Mr. Fernandez contends they

worked less than eight hours per day, and often substantially less than that.

The plaintiffs quit their jobs in June 2000, claiming the pay was inadequate. In January 2002, they filed this action for unpaid minimum wages, exemplary damages, and reasonable attorney fees.

The defendants then filed a motion to dismiss on summary judgment, contending the plaintiffs were exempt from the requirements of the MWA. The superior court granted the motion and later dismissed the plaintiffs' complaint.[1]

■■■■ The meaning of a statute is an issue of law and is reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the meaning is plain on its face, the court must give effect to that plain meaning. *Id.* A statute's plain meaning is

> derived from what the Legislature has said in its enactments, [and] from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question. . . . Of course, if, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history.

*Id.* at 11-12.

■■ ■■ The MWA requires employers to pay nonexempt employees a minimum wage. RCW 49.46.020(2). Exemptions to the act must be "narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation." *Drinkwitz v. Alliant Techsystems*, 140 Wn.2d 291, 301, 996 P.2d 582 (2000). The burden of establishing an exemption is on the employer. *Stahl v. Delicor of Puget Sound, Inc.*, 148 Wn.2d 876, 881, 64 P.3d 10 (2003). RCW 49.46.010(5) defines the term "employee" broadly but excludes various

---

[1] The Fernandezes filed a counterclaim for breach of the employment contracts, on which the court denied the plaintiffs' motion for summary judgment. The Fernandezes have agreed not to pursue their counterclaim until all appeals have been exhausted, and the superior court found there was no just reason for delaying entry of the order dismissing the plaintiffs' claim. *See* RAP 2.2(d).

workers. The provision at issue here is subsection (5)(j), which excludes:

> Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties.

This provision is a model of legislative inexactitude. As the parties' arguments demonstrate, it is susceptible to at least two very different meanings. On one hand, as the plaintiffs contend, it may mean that employees who spend substantial portions of their work time subject to call (including those who reside or sleep at the place of employment) are excluded from the MWA requirements when they are not engaged in the performance of active duties. On the other hand, as the defendants contend, the provision may mean that two classes of employees are excluded from the MWA: (1) those who are required to reside or sleep at the place of employment and (2) those who spend substantial portions of their work time subject to call, but only for times when they are not engaged in the performance of active duties.

Although the parties' arguments dissolve into a debate over the definitions of "or" and "otherwise," at the core of the issue is a disagreement about the nature of the exclusion itself. The plaintiffs contend subsection (5)(j) excludes workers while they are engaged in certain *activities*. When workers are not engaged in those excluded activities, the plaintiffs contend, they are covered by the MWA. The defendants contend subsection (5)(j) excludes certain *workers*, regardless of their activities.

The plaintiffs are generally correct. The phrase "and not engaged in the performance of active duties" clearly indicates the legislature intended in some way to exclude certain *activities* (or nonactivities) from coverage under the MWA. *See Chelan County Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wn.2d 282, 290-91, 745 P.2d 1 (1987) ("If the on-call time is not spent in the performance of active duties,

then the exclusion applies and the on-call time is not compensable."). Other exclusions contained in subsection (5) similarly provide that workers are excluded while engaged in certain activities, implying the workers are included while they are engaged in other activities. *See, e.g.*, RCW 49.46.010(5)(e), (h), (i).

In *Chelan*, 109 Wn.2d at 292, the Supreme Court adopted a four-factor test for determining whether on-call time is active duty and thus compensable under the MWA: "[1] the parties' agreement, [2] whether the employees are required to remain on the premises or at any particular place during the on-call time, [3] the degree to which the employees are permitted to engage in their own activities during on-call time, and [4] if the employee's availability during on-call time is predominantly for the employer's or the employee's benefit."

As the defendants point out, *Chelan* did not expressly address the portion of subsection (5)(j) relating to employees who are required to live or sleep at the place of employment. They contend the *Chelan* four-factor analysis applies only to the second category of excluded workers, i.e., those who spend substantial portions of their work time subject to call. They contend the analysis does not apply to workers who are required to live or sleep at the place of employment, who they say are categorically excluded. But the plaintiffs contend subsection (5)(j) excludes only one category of workers: those who spend substantial portions of their work time subject to call (including those required to live or sleep at the place of employment). The applicability of *Chelan* to the facts of this case thus turns on which meaning of subsection (5)(j) is correct.

A Division One panel has addressed the precise issue raised here. *See Strain v. W. Travel, Inc.*, 117 Wn. App. 251, 70 P.3d 158 (2003), *review denied*, 150 Wn.2d 1029 (2004). In that case, a worker who was required to sleep on a cruise

ship contended he was covered under the MWA.[2] The court rejected the interpretation of subsection (5)(j) urged by the plaintiffs here, for four reasons: First, it stated the plaintiffs' interpretation

> produces a category of excluded employees who are required to sleep at the workplace, and are not engaged in the performance of active duties. Such a category of workers could be sensibly identified only if the contrary were possible—that is, if a worker could be sleeping at the workplace while performing active duties. This is not a reasonable interpretation, and leads to absurd results.

*Strain*, 117 Wn. App. at 255. This analysis is an incorrect reading of subsection (5)(j). It does not exclude workers who are sleeping and (at the same time) not engaged in the performance of active duties.[3] The *Strain* court ignored the possibility that workers who are required to sleep at the workplace may be engaged in active duties during nonsleeping hours. These are the duties for which the plaintiffs seek compensation under the MWA.

Second, the *Strain* court held that the plaintiffs' interpretation of the statute would create a category of workers who are sometimes covered and sometimes exempt from the MWA, noting (without citing to authority) that "MWA exclusions serve to identify broad categories of excluded workers based on the type of employment." *Strain*, 117 Wn. App. at 255. It also noted that such a worker's variable status would create "accounting and other potential problems." *Id.* But as we have explained, even under the defendants' interpretation, subsection (5)(j) itself creates a variable status for at least *some* workers. The *Strain* court does not explain why accounting problems would be accept-

---

[2] The *Strain* court ultimately decided the MWA claim was preempted by federal maritime law. *Strain*, 117 Wn. App. at 258-60. Its discussion of the MWA thus is dictum.

[3] The plaintiffs concede that workers generally cannot engage in active duties while sleeping. *But see Chelan*, 109 Wn.2d at 297 ("[T]he compensability of sleep time of individuals who are on call for periods longer than 24 hours is a question of fact, which must be resolved by applying the same multifactor approach which we have adopted with respect to on-call time in general.").

able for these workers but not for workers who are required to live or sleep at the workplace.

Third, the *Strain* court noted, as do we, that *Chelan* did not directly address that portion of subsection (5)(j) relating to workers who are required to live or sleep at the workplace. Of course, this itself is not a reason for rejecting the plaintiffs' interpretation of the provision.

■ Fourth, the *Strain* court concluded that the legislative history supports the defendants' interpretation. It quoted the following response by a legislator to a question about whether ship workers would be covered for periods during which they were on-call:

> I believe that provision you read is the same or similar to one in the original bill during the regular session, and it is not in this particular bill for two reasons. The first one is that this is only a wage bill and not an hour bill, and the second is that a person is exempted whose duties require him to sleep at his place of employment or otherwise spends a substantial time subject to call.

House Journal, 37th Leg., Ex. Sess., at 147 (Wash. 1961). This legislative history does not support the *Strain* court's conclusion. The comment of a single legislator generally is not a reflection of legislative intent. *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 461, 832 P.2d 1303 (1992). Moreover, the legislator's comment simply ignores the final phrase of subsection (5)(j), incorrectly suggesting the exemption covers all employees who "spend[ ] a substantial . . . time subject to call."

The *Strain* court's analysis does not support its conclusion that workers required to live or sleep at the workplace are categorically excluded from the MWA.

The defendants raise an additional issue. They contend the plaintiffs' interpretation of subsection (5)(j) would lead to an absurd result by posing the hypothetical person who employs a live-in health-care attendant, requiring the worker to be present 24 hours per day. They contend the plaintiffs' interpretation would require the employer to pay

the worker for *all 24 hours*. But this argument also ignores the final qualifying phrase of subsection (5)(j), which provides the exemption applies when the worker is "not engaged in the performance of active duties." The hypothetical employer thus would not be required under the MWA to pay for hours during which the worker is not engaged in active duty. The plaintiffs' interpretation does not lead to the absurd result the defendants fear.

█ Because the *Strain* court held there was only one reasonable interpretation of subsection (5)(j), it found it unnecessary to apply rules of statutory construction. It thus dismissed the provision's "errant comma" before the phrase "and not engaged in the performance of active duties." *Strain*, 117 Wn. App. at 256, 257. However, as we have demonstrated, the plaintiffs' interpretation of the subsection is reasonable. The provision thus is ambiguous, and resort to the rules of construction is appropriate.

> The last antecedent rule provides that, unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent. *Boeing Co. v. Department of Licensing*, 103 Wn.2d 581, 587, 693 P.2d 104 (1985). However, the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one. *Judson v. Associated Meats & Seafoods*, 32 Wn. App. 794, 801, 651 P.2d 222 (1982); 2A Norman J. Singer, *Statutory Construction* § 47.33 (5th ed. 1992).

*In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781-82, 903 P.2d 443 (1995).

█ In subsection (5)(j), there are potentially two antecedent phrases to which the qualifying phrase "and not engaged in the performance of active duties" may apply: the "reside or sleep" phrase and the "otherwise . . . subject to call" phrase. Under the last antecedent rule, the comma before the qualifying phrase is evidence it is intended to apply to both antecedent phrases. The result is that subsection (5)(j) exempts workers who are required to live or sleep at the workplace, but only for those hours during

which they are not engaged in active duties. To determine which hours are compensable, a court should apply the four-factor test adopted in *Chelan*.

Particularly in light of the requirement that MWA exemptions be narrowly construed, the plaintiffs' interpretation of the exemption in subsection (5)(j) is correct. The court's order dismissing the plaintiffs' MWA claim is reversed, and the case is remanded for trial.

SWEENEY and SCHULTHEIS, JJ ., concur.

Reconsideration denied April 23, 2004.

Review granted at 153 Wn.2d 1002 (2005).